IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

W.R.,

             *Petitioner*,

    v.

JEFFREY CRAWFORD, *et al*.,

             *Respondents*.

1:26-cv-1720-MSN-WEF

<u>ORDER</u>

W.R. ("Petitioner") filed a three-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1. Specifically, Petitioner alleges that his continued immigration detention violates his due process rights (Counts I and II), and the Immigration and Nationality Act and Administrative Procedures Act (Count III).

Petitioner is currently detained at the Farmville Detention Center in Farmville, Virginia. ECF 1 ¶ 3. The Petition initially framed the permissibility of Petitioner's detention as a matter of whether he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) or if he was detained under 8 U.S.C. § 1226(a) and thus entitled to a bond hearing that Federal Respondents were allegedly withholding on the basis of their policy and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). *Id.* ¶¶ 5–7. In response, the Federal Respondents aver that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). ECF 14 at 2. Petitioner filed a reply, arguing that the Federal Respondents invoked § 1226 as the basis for Petitioner's current detention, and that even if Petitioner was detained under § 1225, his due process rights were violated because he never received a bond hearing and faces continued detention. ECF 15.

### I.    BACKGROUND

#### A.    Factual Background

Petitioner is a citizen of Nicaragua. ECF 1 ¶ 19. On April 19, 2022, United States Border Patrol Agents arrested Petitioner after determining he had unlawfully entered the United States from Mexico. ECF 14-1, Decl. of Justin Richardson, Supervisor Detention and Deportation Officer ¶ 6. On April 22, 2022, Petitioner was placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1)(A) but expressed a fear of return to Nicaragua. *Id.* ¶ 7. That same day, Petitioner was released on humanitarian parole. *Id.*; *see also* ECF 1-1, Interim Notice Authorizing Parole. Petitioner's Interim Notice of Authorizing Parole provides, in relevant part:

> Your parole authorization is valid for one year beginning from the date on this notice and will automatically terminate upon your departure or removal from the United States or at the end of the one-year period unless ICE provides you with an extension at its discretion. ICE may also terminate parole on notice prior to the automatic termination date.

ECF 1-1. Under this notice, Petitioner's parole would have purportedly terminated on April 22, 2023. Nothing in the record suggests that DHS contacted Petitioner at the end of the parole period, and he appears to have remained out of custody without incident.

On October 30, 2024, Petitioner filed an application for asylum. ECF 14-1 ¶ 8. After a credible fear interview with an asylum officer, on August 27, 2025, Petitioner received a positive credible fear determination and was issued a notice to appear on September 30, 2025 ("NTA"). *Id.* ¶¶ 9-10; ECF 1-2, Notice to Appear. Petitioner was charged with being removable from the United States under 8 U.S.C. § 1182(a)(6)(A)(i) and 8 U.S.C. § 1182(a)(7)(A)(i). ECF 14-1 ¶ 10; ECF 1-2. The NTA identified Petitioner as an alien "present in the United States who has not been admitted or paroled." ECF 1-2.

Months later, on January 31, 2026, ICE agents detained Petitioner at his home and served him with Form I-200, Warrant for Arrest of Alien. ECF 14-1 ¶ 11; ECF 1-3, Warrant for Arrest of

2

Alien, at 2. Petitioner's Notice of Custody Determination explained that Petitioner was being detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act[.]" ECF 1-3 at 1. In April 2026, an Immigration Judge ("IJ") denied Petitioner's application for asylum and ordered him removed. ECF 14-1 ¶ 12. Petitioner appealed that decision to the BIA. *Id.* ¶ 13. Petitioner remains in the Farmville Detention Center. ECF 1 ¶ 3.[1]

### B.    Legal Background

Persons detained upon arrival into the United States fall into two categories: noncitizens including those who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" or specially designated by the Attorney General covered under 8 U.S.C. § 1225(b)(1), and "most other applicants for admission" covered under the "catchall" provisions of 8 U.S.C. § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Persons subject to Section 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id*. But, if a noncitizen subject to Section 1225(b)(1) indicates either an "intention to apply for asylum' or a "fear of persecution," then they will be referred for an asylum interview by an immigration officer. *Id*. If the officer determines that the noncitizen has a "credible fear" of persecution, then the claim will receive "full consideration" in standard removal proceedings pursuant to 8 U.S.C. § 1229a. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020).

In such a scenario, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). But even so, the government may still release the noncitizen on parole "on a case by case basis for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A)).

---

[1] Federal Respondents have waived any argument that Petitioner did not exhaust his administrative remedies with respect to his habeas claim.

Regulations require that, in determining whether parole is appropriate, DHS officials "should apply reasonable discretion" and may consider "all relevant factors" including: the giving of an undertaking by the applicant, counsel, or sponsor to ensure appearances or departure; community ties such as close relatives with known addresses; and agreement to reasonable conditions (such as periodic reporting of whereabouts. 8 C.F.R. § 212.5(d) (noting that appropriate bond or "reasonable assurances that the alien will appear at all hearings and/or depart the United States when required to do so" may be required).

Humanitarian parole "shall not be regarded as an admission of the alien" and if parole is revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). But in revoking parole, Section 1182(d)(5)(A) requires that the DHS determine that "the purposes of such parole . . . have been served." Moreover, the regulations specify that:

> (1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) <u>if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.</u>
>
> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, <u>upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated</u> upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

8 C.F.R. § 212.5(e) (emphasis added).

8 U.S.C. § 1226, in contrast, establishes "the default rule" for detaining and removing aliens "'already present in the United States.'" *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564, 578 (E.D. Va. 2025) (quoting *Jennings*, 583 U.S. at 303). Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pending the removal decision, the Attorney General may "continue to detain the arrested alien," "release the alien on ... bond of at least $1,500," or "release the alien on... conditional parole." *Id.* §§ 1226(a)(1)–(2) (emphasis added). Thus, individuals subject to detention under § 1226(a) are entitled to a bond hearing.

Sections 1225 and 1226 create a dichotomy: § 1225(b)(2)(A) "covers aliens seeking admission to the United States" and § 1226(a) "covers aliens already present in the United States." *Duarte Escoboar*, 807 F. Supp. 3d at 578. A detainee seeking bond must therefore demonstrate that they are detained subject to § 1226, which permits bond determinations, rather than § 1225, which does not.

## II.   ANALYSIS

The central questions presented in this Petition are 1) whether Petitioner's re-detention falls under § 1225 or § 1226, and 2) whether Petitioner's re-detention violates due process. Petitioner claims that his detention is governed by 8 U.S.C. § 1226, and he is therefore entitled to an individualized bond hearing. ECF 15 at 2. Federal Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1), that this Court lacks jurisdiction under 8 U.S.C. § 1252, that Petitioner has received the process to which he is due, and that the length of his detention does not implicate his due process rights. ECF 14. Petitioner responds that even if

Petitioner is subject to § 1225(b)(1), Petitioner's continued detention denies him meaningful due process. ECF 15 at 2.

First, this Court has previously rejected Respondents' jurisdictional challenges under § 1252 and does so again here. *See Luna Sanchez v. Bondi*, No. 1:25-CV-018888-MSN-IDD, 2025 WL 3191922, at *3 (E.D. Va. Nov. 14, 2025) ("Here, Petitioner does not challenge the procedures or policies through which DHS implements expedited removal under 8 U.S.C. § 1225(b)(1); rather, he challenges whether he is subject to those policies in the first place and whether his continued detention … violates his right to due process. Accordingly, § 1252(a)(2)(A)(iv) has no application[.]").

Second, Petitioner is correct that he is subject to discretionary detention under § 1226. It is clear, and Petitioner does not contest, that when he was initially detained at the United States border with Mexico in April 2022, he was processed for expedited removal under § 1225. ECF 14-1 ¶¶ 6, 7. Petitioner was then released on humanitarian parole. ECF 1-1 ("This letter is to inform you that [ICE] has decided to parole you from its custody pursuant to its authority under section 212(d)(5)(A) of the [INA]."). When humanitarian parole is granted, "it comes with a key 'reservation of rights by the Government'" whereby the government is "authorized to continue to 'treat the non-citizen' on parole 'as if stopped at the border.'" *Gomez Villalobos v. Crawford*, No. 2:26CV12, 2026 WL 1165576, at *3 (E.D. Va. Apr. 29, 2026) (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215–16 (D. Mass. 2025)). As explained in the INA, humanitarian parole "shall not be regarded as an admission of the alien," and if parole is revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Courts have described this treatment, whereby a non-citizen is

physically permitted to enter the country but are treated, for legal purposes, as if stopped at the border, as a "legal fiction." *Pineda-Berrios v. Lyons*, No. 1:25-CV-2332 (LMB/LRV), 2026 WL 384159, at *2 (E.D. Va. Feb. 11, 2026) (quoting *Chanaguano Caiza v. Scott*, 2025 WL 3013081, at *5 (D. Me. Oct. 28, 2025)).

The government asks this Court to find that the Petitioner inhabited this legal fiction when he was released on humanitarian parole on April 22, 2022, and further, that he remained trapped in that status to the present day. However, that contention is belied by both the record and common sense. Even if the Court accepts that Petitioner entered the humanitarian parole legal fiction at the inception of the parole on April 22, 2022,[2] that status ended with the expiration of his parole. Petitioner's parole notice provided that the parole was valid for "one year beginning from the date on this notice and will automatically terminate … at the end of the one-year period unless ICE provides you with an extension at its discretion." ECF 1-1. The notice was dated April 22, 2022, and ICE did not extend Petitioners parole. *Id.*: ECF 14-1 ¶ 7. As such, Petitioner's parole automatically expired on April 22, 2023. 8 C.F.R. § 212.5(e)(1)(ii) ("Parole shall be automatically terminated without written notice ... at the expiration of the time for which parole was authorized[.]"); ECF 14-1 ¶ 7. Additionally, the legal fiction expired alongside the expiration of

---

[2] Some Courts have found that the legal fiction only applies to admission rights, and that it does not apply to the right to be free from detention without the process of a detention hearing. *See Torres v. Hermosillo*, No. 2:25cv2687, 2026 WL 145715, at *4 (W.D. Wash. Jan. 20, 2026) (explaining that the entry fiction applied by the Supreme Court in *Thuraissigiam* applied only to noncitizens' rights regarding admission and that "the Supreme Court has never applied the entry fiction doctrine ... to constitutionally justify the detention of a person living freely, for years, within the United States" (citations omitted)); *Rincon v. Hyde*, 810 F. Supp. 3d 101, 113 (D. Mass. 2025) (ordering a bond hearing after observing that "to apply the entry fiction doctrine to [a petitioner that was on humanitarian parole for more than three years] is to set aside the plain meaning of the Fifth Amendment altogether"); *Strunin v. Garcia*, No. 5:26cv106, 2026 WL 958952, at *8 (S.D. Tex. Mar. 3, 2026) ("Pretending that Petitioner never entered the United States [during the years he was a parolee] not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every 'person' within the United States." (quoting *Torres*, 2026 WL 145715, at *4)); *Singh v. Bondi*, No. SA-26-CA-00541-XR, 2026 WL 752457, at *8 (W.D. Tex. Mar. 16, 2026) ("Noncitizens who have lived with relative freedom in the United States for extended periods—unlike those detained in immigration processing centers at the border—cannot reasonably be deemed never to have been 'here.'" (quoting *Rincon*, 2025 WL 3122784, at *7)). The Court need not answer that question here, finding that even if the fiction applied at some point in the past, it is not presently applicable to the Petitioner.

7

Petitioner's humanitarian parole, thus making Petitioner like any other undocumented immigrant present within the United States. *See Gomez Villalobos v. Crawford*, No. 2:26CV12, 2026 WL 1165576, at *5 (E.D. Va. Apr. 29, 2026) ("[E]ven accepting that the 'legal fiction' of non-presence recognized in *Thuraissigiam* extends to detention procedures … this Court finds that such fiction ends when a petitioner has enjoyed years of post-parole presence."); *Becker Gabriel Tirado Izarra, v. Joseph Simon*, No. 3:26CV148 (RCY), 2026 WL 1876778, at *4 (E.D. Va. Jun. 30, 2026) ("…Petitioner's parole ended and he was not detained based on the expiration of his parole. Rather, Petitioner was detained again after agents randomly encountered him. Accordingly… Petitioner is entitled to a bond hearing pursuant to § 1226(a)."); *Penott Rodriguez v. Fields*, No. CV 26-117-DLB, 2026 WL 1078101, at *3 (E.D. Ky. Apr. 21, 2026) ("It follows logically then, that once Petitioner's parole expired, yet he remained in the country, he would have similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having any clue as to their whereabouts."); *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065, 2025 WL 3314420, at *17 (E.D.N.Y. Nov. 28, 2025). "Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal.").

The termination of Petitioner's humanitarian parole, and thus the termination of his inclusion in expedited removal proceedings, is confirmed by the record. The record reveals that throughout the process of re-detaining the Petitioner, the government treated him as detained pursuant to § 1226. Petitioner's Notice to Appear identifies Petitioner as "an alien present in the United States who has not been admitted or paroled." ECF 1-2. It similarly lists Section 212(a)(6)(A)(i) as the legal basis for Petitioner's subjection to removal. *Id.* ("Section

212(a)(6)(A)(i) of the Act, as amended, as an alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General."). Petitioner's Notice of Custody Determination lists that he was detained pursuant to "section 236" of the INA, ECF 1-3 at 1, and a warrant was issued for his arrest. ECF 1-3 at 2. There is nothing in the record that indicates that the government re-detained Petitioner pursuant to expedited removal proceedings or to the revocation of his humanitarian parole.

Because Petitioner has been present in the United States for roughly three years following the expiration of his humanitarian parole, and because § 1226(a) sets forth "the default rule" for detaining and removing noncitizens "already present in the United States," *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018), his detention is governed by § 1226(a). And under § 1226(a) and its implementing regulations, he is entitled to a bond hearing before an IJ in which the IJ must determine whether he poses a danger to the community or a risk of flight. 8 U.S.C. § 1226(a); 8 C.F.R. § 1236.1(d)(1). Unless the IJ makes such a determination, Petitioner's continued detention is unlawful and, for many of the reasons stated in *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at **8-10 (E.D. Va. Sept. 30, 2025), violates his right to due process.[3] Thus, Petitioner's current detention is unlawful, and Federal Respondents must release him.

### III. CONCLUSION

For all the reasons stated above, the Petition (ECF 1) is GRANTED, and it is hereby

ORDERED that Petitioner be immediately released from custody, with all his personal property, pending his bond hearing before an immigration judge. Petitioner must live at a fixed

---

[3] Because the Court grants the Petition as to Petitioner's due process claims, it need not address Petitioner's other claims.

address which he must provide to the Federal Respondents.[4] Petitioner must also appear at the bond hearing once Federal Respondents notify him of its date, time, and location; it is further

ORDERED that Federal Respondents must provide Petitioner with a standard bond hearing pursuant to 8 U.S.C. § 1226(a); it is further

ORDERED that Federal Respondents are ENJOINED from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1225(b)(1); it is further

ORDERED that Federal Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Petitioner unless he has committed a new violation of any federal, state, or local law, or has failed to attend any properly noticed immigration or court hearing, or pursuant to 8 U.S.C. § 1231(a)(2).

**IT IS SO ORDERED.**

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
_____
Michael S. Nachmanoff
United States District Judge

July 10, 2026
Alexandria, Virginia

---

[4] If Petitioner opts to file a pleading in this civil action notifying the Federal Respondents of his fixed address, Petitioner should file that pleading under seal. No separate motion to seal will be required.